and Donna Whiteside, Mr. Andrews. Thank you. May it please the Court, Walter Andrews, Huntman Williams, on behalf of the appellant, State National Insurance Company, and I've reserved four minutes of bubble time. That request will be granted. Thank you. I think the foremost issue to us is that, keep in mind the stage of the case when it was dismissed, there was one issue that was presented to the district court judge. The district court judge ruled on that one issue and no other issue was raised. And that issue was whether, even if State National could prove its allegations that Ms. Whiteside had If you don't mind, beforehand, let's talk about jurisdiction. I have a concern about that. As far as I can tell, the motion to dismiss and the reconsideration motion were back in 2010, correct? Correct. In October of 2014, the stipulation of dismissal gets started at that point. Now, you could say, I suppose, that the time to appeal would begin when all other issues and parties are out of the case, I would think. And that would be the time when the stipulation of dismissal is filed, which is October 14th. Now, it's true you had a Rule 60 motion pending, but under Rule 4 of the appellate rules, in order for that motion to toll the time to appeal, it has to be within 28 days of the final judgment against your client. I know it's a lot to throw at you, but do you have a reaction as to the timeliness of the appeal? Yes, Your Honor. I don't think that, with all due respect, the other side has been candid in the discussion of these issues in several respects. One, the fact is we could not appeal the earlier ruling because it was interlocutory. True. And under their view of the facts and law, we would never be able to appeal that ruling unless we mention it in our appeal here, which we did under Viola's by saying we appeal the judgment and therefore everything that was ruled on before the judgment. But what about all the other, under Rule 50, similar to Rule 54, I mean, all the other parties and issues are then out of the case. Isn't that the time that you can appeal once you're the only sort of issue left? I don't think until the case is over we can appeal the earlier motion because the 30 days already had run. I guess that's what Judge Shigaris is saying, wasn't the case over when that stipulation of dismissal was filed. If you did nothing, we wouldn't be here. Right. What we did was we filed a Rule 60 motion because at that point the judge had made a ruling that we thought gave us a reason to go back to the case and say, your standards are now in conflict. We want you to revisit this earlier ruling. But until the final case was closed, the final order was issued, we did not have an opportunity to appeal, at which point we then appealed everything that proceeded. But if you didn't file your Rule 60 motion, you're saying the case never would have closed. Because the matter of course, the court would then have closed the case. But we, in the, the judge was involved in the settlement discussions. And in the process, we said, how are we going to do this to see where we go? Well, we get the county out so then we can get the judge to focus on, refocus on the earlier ruling which had not been appealable. And we did not, filing the Rule 60 motion did not make it appealable because if it wasn't appealable before, that didn't change things. And until the judge closed the case, we couldn't appeal to this court on the prior rulings. Okay. All right. Okay. And I think that, to be candid, all these rulings do relate. I mean, the Rule 60 motion Well, that's a different issue then. That has to do with the scope of the notice of appeal, right? True, in terms of whether there's notice, sufficient notice in terms of the interplay and the like. Well, tell us, Mr. Andrews, I mean, this case is in an unusual posture when you're suing an employee of your insured. The insured, they became your insured by an insurance contract and you're trying to bring a tort action against Ms. Whiteside. What is the duty that she owes to you? Well, I'd say it's multiple steps to answer your question. One is the insurance contract requires that, unlike the normal situation, the insured, the county, defend itself. It can do so by either retaining outside counsel or using one of its own employees. So that's what it shows to do here. There should be no difference. In theory, as an insurance contract, they can do either. That shouldn't change, then, the duties that are owed to us. Now, the reason the duty is owed to us, the state and national, as we allege in the complaint, and that issue was never presented to the trial court, is because we had a reason, a right, to rely on the employee, the attorney, representing our interest in this litigation, underlying litigation, to properly litigate the case and to properly advise us as to litigation. How do you turn that contractual right into some independent fiduciary duty? You rely on a number of cases, but they're all cases where it's an insurer who's a direct insurer involved with the selection of counsel and there's that tripartite relationship between the insured and the insurance company and the counsel selected by the insurance company. You're an excess insurer and the other side has pointed out several cases that say that's a distinction with a real legal difference. How do you go from being an excess insurer with a contract right into somebody who says you're entitled to rely on Whiteside as your counsel? Because she knew of our need to rely on her. She made representations to us that prevented us from settling the case because we relied on her. Even New Jersey law, where it says there can be duties owed to third counsel, doesn't couch that in terms of the lawyer being your lawyer. Right? I mean, New Jersey cases, when they talk about duties owed, they talk about maybe duties could be owed to third parties, but you seem to be Now, where do you get that? We allege that in alternative. We allege, one, that she was our lawyer. Sure, and that's what I'm asking about. There's no tripartite relationship. Okay, so where do you get the idea that she's your lawyer? I mean, I understand your argument that independently she may have owed you some duties, but I'm trying to get my head around your claim that she's your lawyer. Where is there anything in the record that shows the establishment of an attorney-client relationship? Anything? Because she was representing our interests because at above $300,000, we were the ones exposed. Turns out we had a chance to settle the case. Do you have any case at all that says an excess insurer has an attorney-client relationship with its insured's lawyer? Well, I don't know that we need to go that far because we have lots of cases that say Well, I agree. That's why I'm pressing you on it. I don't understand why you say that If you can, I think our stronger argument, and this was, you know, we plied this before discovery back in 2009. Our stronger argument is to say, we don't need a contractual relationship. She knew that we were there. She knew we were relying on her because the case had been going on for 20 months before we even knew about it. Okay, well let's accept then, just for the sake of discussion for the moment, that maybe we're in agreement that she's not your lawyer, but she may have some duties to you. You say in your reply brief something significant, and I want to point that out to you. This is on page 10. You talk about the economic loss doctrine at this point, responding to the answering brief from Ms. Whiteside, and you say on page 10, the bottom of the first is usually more appropriate when there is no fiduciary relationship, so that the parties can more freely bargain concerning allocation of risk. And that's a quote from the Chrysler's Inc. case, the South Dakota case. As I read that, I wondered, you know, isn't that insurance company sort of the classic example of a large, sophisticated business unit fully capable of freely bargaining concerning the allocation of risk? It's their business. Not in this case, and none of those facts at all. This is a situation, we're not a typical excess carrier anyway. We are relying on them to defend the case. We're not picking counsel. No tripartite issue. They pick counsel. They defend the case. We rely on that with $10 a month. As we allege, we say, what's going on with the case? She says it's a strong case. Sure, but your own case here is making the point, and this is what I'm trying to get you to respond to, your own case is making the point that sophisticated parties that can bargain freely concerning the allocation of risk should be held to their bargains. That's an economic decision that's reflected in the contractual arrangement, and you don't need independent tort duties to look out for them. So my question to you is, isn't an insurance company, which is in the business of allocating risk, the ideal party to be held to the economic loss rule? I don't believe so in this case, and I don't believe so in the New Jersey law, which also says that in malpractice cases, we get consequential damages. If anything, that argument would go to the direct damage claim for our policy limits. But we still incur consequential damages, and under the SAFR line of cases, even if we were to win, which is with Judge Hillman's hypothetical below, we would still be harmed because of the incurrence of attorney's fees. In SAFR, the plaintiff there won below, but still had a malpractice case at least to present to a jury as to whether it was entitled as consequential damages. Now, is your strongest argument, one, that this is a malpractice claim, not a contractual claim, and two, the duty that Whiteside owed to you is a duty to you as a non-client, not as a client? Yes. And that's the basis upon which you want us to review your request to reinstate the case? I think that fits best within the two lines of New Jersey cases that touch on those issues. Okay. All right. Okay, we'll hear from the other side and get back in rebuttal. Why don't we hear from Mr. Fiorvanti on the jurisdictional question first. That's okay with you. May it please the Court, Matthew Fiorvanti on behalf of Appelli, Donna Whiteside. Your Honor raised the question as to whether or not this Court has jurisdiction and was focused more on the timeliness issue. Assuming that their appeal was timely, because their Rule 60B motion was actually filed in April 2014 before the case was settled in October of 2000. The point about your adversary is that under Appellate Rule 4, in order for it to toll the time to the final judgment as to that particular defendant or plaintiff, as the case may be, is filed. And that didn't occur. That was way after Rule 60B. So that's my concern. Do you have a position on that? I would agree with your Honor that that clock started to run in October when the case was settled. There was no parties and no issues left in the case. It was resolved. How can you say there were no issues left in the case? Didn't they have a 60B motion? They did, but that was again filed months earlier in April of 2014. Right. So help me through the logical puzzle here, because they say, sounds logical to me in fact, they say we could not have appealed his ruling earlier because there were other parties in the case. And then by the time there were no other parties in the case, we still had a case pending because we had a 60B motion under consideration. And when the 60B motion was decided, we filed a timely appeal. So just as strictly as a matter of timing, what's wrong with that reasoning? When there's a judgment, finally a final judgment, disposing of all issues and all parties in the case, measured from the time the 60B motion is disposed of, they file a timely appeal, don't they? I would agree that they filed a timely appeal of the 60B motion. Obviously you can't appeal it until it's decided. Well, it's not like the rest of the case was closed. The case was still open until the 60B was filed. So if they had filed a notice of appeal back in October, wouldn't the correct response from the court have been, hey, this case isn't closed yet, you're premature? I would agree, and that's why our stronger argument is, even assuming it is timely, this court still does not have jurisdiction because the notice of appeal is defective, as it designates only the Rule 60B order. So speak to the Viola point that they make. The Viola point is, there's no dispute that the notice of appeal designates just the December 1, 2014 order. There's no language which says, our appeal also encompasses all prior orders. Now the rule is, where you designate just one order, three things have to be shown. One, a connection between the specified order and the unspecified order. Two, your intention to appeal is apparent. And three, there's no prejudice to the responding party. We readily concede we've not been prejudiced. We've substantively responded to the merits or lack thereof of their potential or putative claim against Ms. Whiteside. We also concede that their intention to appeal the March 2010 order was apparent from their brief. But there's no connection between a Rule 60B order and the underlying March 2010 order. Well, the substance of it was the same, wasn't it? They're like distant cousins. Isn't that a connection? The subject matter of the motion was really connected, wasn't it? It is. And it's hard to then analyze, well, what factors do you consider in determining whether it's connected? Luckily for us, there's a bright-line rule. And this Court recognized it in Wilson v. Burks, where the Court cited approvingly the Supreme Court's decision in Browder for the proposition that, quote, the appeal of the denial of a Rule 60B motion does not bring up the underlying judgment for review. All right. What if they had filed an appeal from the stipulation of dismissal within 30 days of that stipulation of dismissal? Again, it would depend on how they designated that. All right. And they designated that the order which they were appealing from was the grant of the motion to dismiss back in 2010. What would your answer be to that notice of appeal? Well, I wouldn't be standing here arguing that the VIOLA three elements hadn't been satisfied, because they clearly would have. If they had designated – I'm sorry. Go ahead. Complete your answer. If their notice of appeal had designated the June 25, 2010 order, which would have resolved their 59E motion, I wouldn't be standing here making this argument, because the case law says a 59E order goes hand-in-hand with the underlying order for health purposes. But a 60B motion does not. State National knows this. Can you respond to their reply brief? In their reply brief, they say that your arguments about 60B not sweeping up earlier decisions is inaccurate because – and this is page 8 of their brief – State National's 60B motion did not seek reconsideration of a final judgment. Rather, State National sought reconsideration of an interlocutory order that was not earlier appealable, and the motion was filed while the case was pending and not apt for final judgment. That's the distinction they draw. And they say, with some force, the 60B motion was on the very same topic. I mean, that was the purpose of the 60B motion, to get at that earlier interlocutory order. What's wrong with their reasoning that your assertions about 60B are inapt, because those concern cases where a final judgment was implicated by the 60B motion, not an interlocutory order? I don't think there's any legal significance to the fact that the underlying, in this case, order is an order and not a final judgment. 60B is always going to look backwards at something to ask the court to renew or alter a judgment or order. So there's always going to be some connection between the 60B application and the underlying order or judgment. The fact that, in this case, it's an order, an interlocutory order, as opposed to a final judgment, is of no legal significance to the fact that the 60B motion does not bring with it the purposes of this Court's jurisdiction. So your position is that because of case law that talks about 60B in the context of revisiting final judgments, any effort to have 60B motion that seeks revisiting of an interlocutory order has to separately name that interlocutory order, that it makes it a different animal than the other kinds of cases where the appeal will sweep up interlocutory orders? Yes, it's very simple. What State and National should have done in their notice of appeal is say, we're appealing the March 2010 order. Simple. That's what they're doing. That's what their entirety of their appeal focuses on. Compliance with Rule 3, CB1, which says the notice of appeal must designate the order being appealed, is a jurisdictional threshold. Compliance is of the utmost importance according to the Supreme Court's decision in Torres. I would submit that, but haven't we been rather liberal in our interpretation of that rule? That liberality is fleshed out through that three-pronged test. It says, look, you didn't do the right thing. You only designated the one order, so you've got to satisfy these three elements. They haven't done that, again, for the reason being a 60B order has been found to not bring with it the underlying order. I would submit that a defective notice of appeal is analogous to a defective summons, where a summons doesn't have the signature or seal of the clerk or has the wrong name of the defendant. Even if the defendant gets a copy of that lawsuit, there's no jurisdiction in the district court. For the same reason here, that compliance with the Federal Rule of Appeal Procedure 3 is a jurisdictional threshold, their noncompliance and their failure to designate the March 2010 order results in this Court not having jurisdiction. We understand your argument. I think we probably gave you more time than you had asked for by mistake, perhaps, but we won't hold that against you. Thank you. We understand your position. Thank you. Mr. Canning and actually Ms. Berge, I should have picked up the fact that Mr. Canning had asked for 10 minutes, and we'll give him that. So, Mr. Canning.  At page 11 of his March 2010 decision, I think Judge Hillman succinctly summarized what this case is all about. He said, the parties have presented extensive arguments on various legal principles, some complex and others arcane, as to why or why not Whiteside should be left holding the proverbial bag. However, the issue is rather simple. No matter what Whiteside did, her conduct cannot be the proximate cause of state nationals' alleged damages. I think that summarizes it completely. Well, the problem that they point out, which would be helpful for you to address directly, I think is their assertion that the ground sort of shifted under them. The judge said, there's no way you people can be damaged because if it's malpractice, you don't owe any money. And if it's not malpractice, then what do you have to complain about? And then later, the judge says, well, you know what, maybe it could be malpractice and still be adequate within the meaning of the contract. In other words, it could be completely negligent, horrible representation, yet somehow still covered by this contract. So, what, I mean, doesn't that kind of let the air out of those sales? No, I think it's an effort to try to get around the very clear and simple analysis that Judge Hillman did conduct. And that analysis, again, is if the defense was inadequate, then they have no obligation to make any payment under the policy. If the defense was adequate, then they only have to pay that which they contractually obligated themselves to pay. Well, if that were really Judge Hillman's final ruling, then they wouldn't have been filing a 60B motion and we wouldn't be here, would they? I mean, the whole point that brings them here, as I understand it, is their complaint that Judge Hillman said that to start with in October, or in that earlier ruling, but then came back and said, you know what, I can't rule on summary judgment here that there's no damages because maybe, just maybe, there's negligence and it's bad behavior on her part that leads to loss and it still could be viewed as adequate representation under the contract. Now, am I mistaken in reflecting what the ruling was when he ruled on summary judgment? Is that what he said? I think you're accurately stating the position taken by State and National, but Judge Hillman, in his December 2014 opinion, said that they've misinterpreted what he said. And he said, you have to look at the context in which this issue was presented to me. This was a motion filed by State and National for summary judgment on the issue as a matter of law was the defense that was provided adequate or not. That was the context of the motion. At that time when that motion was filed, Donna Whiteside had been out of this case for four years. Well, whether she was in the case or out of the case, let me put it to you this way. Let's have a hypothetical. If they had filed a motion for summary judgment that said, we want a declaration that we don't owe them anything because either way, as you say, we can't possibly be damaged because if she's, now we'll go back to the if this, if that. And the judge said what the judge in effect said here, what you quoted just a minute or two ago, on the legal principle, not the factual point about whether it was adequate or not, on the legal point that you couldn't have it both ways, would they have won that motion? Was the judge prepared to say, I agree, it really is. If it's negligent, it can't be adequate. And if it's adequate, it can't be negligent. That wasn't an issue that was addressed with him because, again, Whiteside was not in the case at the time. The adequacy as it relates to a legal malpractice claim, which they are now seizing on and which they seized on in their motion to vacate the judgment, was simply not before the court. The only issue before the court was the defense which was provided adequate under the contract. Whiteside's not a party to the contract. They're looking to bootstrap the contract claim with a We're speaking past each other. Whether we agree with you or not on your economic loss doctrine, I don't want to go down that path right now. I'm just trying to, and perhaps inartfully I apologize, I'm just trying to get you to focus on what I understand their argument to be. I understand their argument to be the judge in his initial ruling made a statement, a logical statement, which was this is a binary thing. It can't be both things at once. If it's negligent, it can't be adequate. If it's adequate, it can't be negligent. So either way, you shouldn't complain about having some kind of damage, because if it's adequate, you're okay, and if it's negligent, you're following me? I'm trying to reflect exactly what you've just said. They say the judge changed positions. Is that accurate or not? That's not accurate. Judge Hildman told us it's not accurate. In his December 2014 opinion, he said, that's not what I said. They've misinterpreted my ruling. So what is it that the judge said? How is the position they're pressing on us a false and a faulty one? For two reasons. One is they're misinterpreting what Judge Hildman said, but secondly, this court can find on its own that if something is inadequate, that means that you cannot have, if something is adequate, you cannot have committed legal malpractice, because legal malpractice is to deviate from the accepted standard of care. If you're doing something that's adequate, then that necessarily means that you have complied with your standard of care and you cannot have engaged in legal malpractice. And they don't say to this court, because I don't think they can, how you can possibly do an adequate defense and then still be liable in legal malpractice, because the element of legal malpractice requires there to be a deviation from the standard of care. They don't offer any explanation to this court as to how they can have it both ways. Well, how about, let's forget for a minute the attorney-client argument and go to the duty of care. Clearly, you have to concede that in certain circumstances, attorneys do have duties to non-clients, right? In very limited circumstances, our Supreme Court has said. Why is it at this circumstance, where the attorney would know or should know that the non-client will rely on representations? Because in this case, in order to invoke the Petrillo line of cases, and the Supreme Court in the Robiondo case said that's going to be sparingly permitted where we're going to allow that. The non-client has to show that it reasonably relied upon the services by the lawyer and that the lawyer invited that reliance. Reliance is the key. State and national cannot plead that they reasonably relied upon what Whiteside did as far as the defense of the case for three reasons. One is they didn't know about the case for the first 19 months. They certainly can't say that we relied upon anything she did during a period of time when we didn't even know about it. Second, it had nothing to do with the defense of the case. And thirdly, and most importantly, Your Honor, is that they did not rely on any recommendations or advice that she gave with regard to the case. They didn't pay $10 million. True, but what they say is, look, we didn't work the case up. We were told don't worry about it. We just gave you notice, don't worry. And then with one day of notice, they all of a sudden had to decide, do we pony up in the millions of dollars, and that caused them some trouble. That's anti-reliance. That's a rejection. Yeah, but, I mean, listen, an attorney can give their clients a lot of advice. You know, attorneys say all the time, we think you should settle. The client has to make an independent business judgment as to whether or not they want to accept their client's or their attorney's advice. How is that any different than what happened here? Well, first of all, she didn't represent them. She was not their lawyer. No, but she was as advice to a non-client. The mere fact that they didn't accept her suggestion that they pay $10 million, I don't think that's dispositive of the claim as to whether or not there was a duty to State National as a non-client. What is dispositive, I think, respectfully, Your Honor, is that State National must show that it relied upon the advice and services that she provided. They did not. They allege that they actually reviewed the entire file themselves and made their own conclusions as to what the liability issue was. That's what they relied upon. They then relied upon their own contractual provision, which gave them the right not to make any payment if it turned out that there had been inadequate defense. Because of that investigation that they performed, they didn't make any payment in settlement. If there was any attorney-client relationship, if there was any duty that was owed, potentially there could be a claim if Whiteside said this is a case that we shouldn't settle. So you're saying they hung their hat on their insurance contract? Absolutely. Okay. Okay. Is there anything else you want to add? I do not, unless the Court has any further questions. We thank you very much for your presentation, and we'll have Mr. Andrews back on rebuttal. Mr. Andrews, what about that point that, you know, the record indicates that you concluded that you weren't going to pay this thing, and, in fact, you filed a declaratory judgment action, which is before us on appeal, to have a determination made as to whether or not you owed the county any money on this verdict. We also alleged that we could have settled the case much cheaper if she had not misled us and misrepresented earlier. Because of her misrepresentations, we did then also allege that we owe no duty. I mean, we owe no insurance obligation. We owe no insurance. And that's consistent to say we would never have been in this situation, in this pickle, if we had been given appropriate advice as to the value of the case. She said the case wasn't worth anything. We had an opportunity before the verdict to settle the case. Couldn't do it. Didn't do it, excuse me, because we relied on her. Because we believed, after studying the file, after that, that she had committed an inadequate defense or conducted an inadequate defense. We had no coverage. And so we said, A, we have no coverage. But, B, she owes us the malpractice damages. And I think that's what goes back to. . . I think you're asking this court to think that a big company like yours, big enough to provide excess coverage to a lot of insurers, that you're asking us to think, well, a case comes up and you do nothing and say, well, we'll see what happens at the end of this. And if they didn't do a good job, we'll assert the inadequate defense and not pay. Well, this is the only time that's ever happened. Huh? It's the only time this defense has ever been raised. And the allegations of our complaint against his wife's side are very clear, that we didn't do nothing. We said, tell us about this case. We've not been in it for 19 months. Right. Tell us about the case. She says, they have a horrible case. All right, but you're just contradicting yourself. You said you didn't not do anything, which means you did something, which means you did rely on the white side. I asked her all the correct questions. So she gave you bad answers. And she gave us bad answers. Well, she gave you bad answers. But that's why we have a malpractice thing. And that's why I go back to where we were in this stage of the case. None of these issues were raised by white side below or addressed by Judge Helmut. And that's why, for instance, you asked me about . . . I provided a bad answer. I mean, this is not . . . Well, that's why we have alleged these things so we can have a jury tell us. I mean, that's what's so unfair about this case. You're asking for another jury to tell you. We did not get to raise these issues. We alleged alternative theories such as, remember, no discovery at the time or anything. Well, when you say we didn't get to, what you really mean is, we didn't do the investigation, we relied on her, and that's her fault, not ours. Right? That is why we're going to settle if we have a chance to. Why don't you respond, if you would, to Mr. King's point? I was trying to press him with what I thought your argument is. And he pointed to, not explicitly, but I take it he was referring to A212 of the appendix, page 22 of Judge Helmut's opinion, where in a footnote he specifically says, they're misinterpreting my earlier ruling. I did not make such a specific finding and instead observed that the adequate defense and investigation provision does not require the county to generally opine on the adequacy of its abilities to defend and investigate all lawsuits against it in order to meet the condition for coverage. In other words, he seems to be saying, I didn't make inconsistent rulings, and here's my clarification of it, and I'm just talking about contract rights here, and here's how I view the condition precedent kicking in or not kicking in. That's my view of it. What's wrong with their response here at the lectern to your assertion that he gave conflicting answers? One, in A25 of the appendix, in his order that he's referencing back to, he explicitly says that it's a jury question on whether an adequate defense could also possibly support a legal malpractice claim. He clearly says that. That's what forced these parties to settle, because they couldn't take the risk of what a jury would do in that regard with $31 million underlying judgment. As soon as White said it was brought up, he paid $6.5 million. That's the direct damages claim that has never been able to be presented, and in addition, under SAFR, we get the consequential damages as well. Just a practical question for you, if you can answer it. Unless Ms. Whiteside is the most handsomely paid county employee in the history of the United States, you can't possibly be thinking you're going to get $6 million from her to settle up your damages. Isn't this really a way for state and national to say to the county, I know we gave you $6 million in settlement, but we want that back, or at least some sizable chunk of that back? Absolutely not. She has her own malpractice insurance, who's paying counsel to be here, and would pay any judgment. She's not insured under our policy with the county for malpractice claims. For purposes of your attempt to get money on a tort theory based on an excess coverage contract, is this a renegotiation of your settlement? No, although we very, very explicitly carved out of the settlement our right to go after Ms. Whiteside. They acknowledged that she might come after them. They were perfectly comfortable responding to that because of her malpractice. It doesn't matter for our claim whether she has a right against a third party for recovery. We have a claim that we believe should be able to go forward that has not been addressed. Okay. Just one last thing. I think we can't lose the fact that this is a motion to dismiss, and you know the standards you set forth in your brief. Did Judge Hellman apply those standards or something else? I mean, did he make inferences? Well, I think he made inferences as to whether we would be harmed if we prevailed on a malpractice claim by saying we wouldn't therefore owe damages. He never addressed these issues as to whether she owes a duty and things like that. So I think he did make inferences as to the harm, and he never addressed the consequential damages because he said that he recognized SAFR was an exception to the American rule. We weren't proceeding under the American rule of who would pay in that case. We wanted our fees for having to get involved in this at all. Yeah. Okay. Okay. Thank you. All right. Thank you, Mr. Andrews, and we thank all counsel for their work on the case, and we'll take the matter under adjournment.